UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| HELINA JOSEPHSON )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON )<br>)<br>)<br>Defendant )<br>_____ ) | Civil No. 1:19-cv-594 |

## COMPLAINT

Plaintiff, for her Complaint against Defendant, states and alleges:

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA") over this claim for disability benefits under a plan governed by ERISA, 29 U.S.C. § 1001 et seq.

2. Venue is proper in this Court under 29 U.S.C. § 1132(e)(2). Defendant conducts ongoing business in New Hampshire, provides long term disability insurance for employers and employees who reside in New Hampshire, employs New Hampshire residents, has extensive contacts within New Hampshire, and accordingly, is found within New Hampshire.

3. On information and belief, Defendant The Liberty Life Assurance Company of Boston (The Liberty") is the plan administrator for the disability benefit plan ("Plan") that Dartmouth College System created and maintains to provide its employees with income protection should they become disabled.

4. On information and belief, Defendant The Liberty is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business at 100 Liberty Way, Dover, NH 03821 and is the insurer and claims administrator for the Plan.

5. Plaintiff Helina Josephson is a resident of the State of New Hampshire, and resides at 722 NH RTE 118, Canaan, New Hampshire 03741. She is an employee of Dartmouth College System and a participant in the Plan.

6. As set forth in 29 U.S.C. § 1133 of the ERISA statute, the Plan provides a mechanism for administrative appeals of benefit denials. Plaintiff has exhausted all such appeals.

7. On information and belief, Plaintiff was covered at all relevant times under Dartmouth College's Group Disability Plan which was issued by The Liberty Life Assurance Company of Boston ("Liberty") to Dartmouth College to insure the participants of the Plan.

8. On information and belief, The Liberty both funds the Plan and decides whether participants will receive benefits under the Plan. Accordingly, The Liberty has a conflict of interest, which must be considered when determining whether its denial of Plaintiff's benefits was proper.

9. The Liberty's interest in protecting its own assets influenced its decision to deny Plaintiff's application for disability benefits.

10. The Plan is an ERISA welfare benefit plan.

11. Under the Plan, a participant who meets the definition of "disabled" is entitled to disability benefits paid out of the Plan assets.

12. Under the Plan, "Total Disability (or Totally Disabled) means the following: (a) for the purposes of determining the commencement of total disability and thereafter for a period of 30 consecutive months, total disability means the inability of the participant to perform

the normal job duties and responsibilities of his or her position in a satisfactory manner because of a medically determinable physical or mental impairment."

13.     Plaintiff's occupation was Operations Director for the Biochemistry and Cell Biology Department at Geisel School of Medicine, Dartmouth College.  Her key responsibilities included but were not limited to financial planning and analysis, developing and overseeing budgets, plan development, accounting, purchase order and invoice approvals, grant administration, overseeing research plans, grant proposals, payroll management, development of recruitment packages, staffing recommendations, developing and implementing diversity plans, general admission, development of business plans, responding to external requests, collaboration with other Operations Directors, developing processes for evaluating programs, identifying and coordinating special projects, staff development monitoring, and developing, and implementing training and professional development.

14.     Plaintiff became disabled under the terms of the Plan's policy on or about September 5, 2017, and continues to be disabled as defined by the Plan.

15.     Plan benefits were due to begin on March 20, 2018 after the Plan's elimination period was completed. Accordingly, Plaintiff is entitled to benefits under the terms of the Plan.

16.     Plaintiff submitted a timely claim to The Liberty for long term disability benefits that the Liberty denied by letter dated June 21, 2018.

17.     Plaintiff filed a timely appeal of The Liberty's decision, but The Liberty denied Plaintiff's appeal on December 27, 2018. Plaintiff has thus exhausted her administrative appeals under the Plan.

18. Plaintiff provided Liberty with substantial medical evidence from her treating providers that included diagnoses of polymyalgia rheumatica, ("PMR"), depression, anxiety, fibromyalgia, and chronic migraine headaches with and without aura.

19. Plaintiff's primary care provider is Mary Ellen Copening, PA-C, of Dartmouth Hitchcock primary care in Lebanon, New Hampshire. In a letter to The Liberty, dated October 23, 2018, Ms. Copening wrote:

> I have known this client since 1999, 19 years. Over that course of time, she faced ontoward emotional stress, and chronic migraine headaches, exhaustion, impaired hearing, attention deficit disorder, and depression. Through all that time, this patient powered through her job, and in fact was promoted several times during the course of those 19 years. She did not take time off of work unless she was literally incapacitated by illness, and had a stellar track record. The final blow for her came when she developed PMR and was diagnosed September 6, 2017 when her CRP was found to be 44. Her workload at that time was exhausting and her entire body ached in response to the disease.

20. Polymyalgia Rheumatica, or "PMR", "involves inflammation of the lining of joints, causing severe pain and stiffness in the muscles of the neck, back, shoulders and hips." https://www.merckmanuals.com/home/bone,-joint,-and-muscle-disorders/vasculitic-disorders/polymyalgia-rheumatica. The level of C-reactive protein, or "CRP" in a patient's blood increases when there is inflammation in a person's body, and can indicate infection or a chronic inflammatory disease. https://www.mayoclinic.org/tests-procedures/c-reactive-protein-test/about/pac-20385228.

21. According to Ms. Copening, Plaintiff

> attempted to go back to part-time work, against my advice because she was feeling very guilty and ashamed. This is a lady with a very strong work ethic and is a highly conscientious mother and wife. She was the chief support for her family and also at her job. She attempted and failed to return to work… This stress further exacerbated her depression and she sought to get help.. . .   When she got ill… she had tipped an already fragile scale which was firstly underlying illness and second concomitant growth of her job requirements. This made reintegration impossible.
>
> To this day, she has not made a full recovery and continues to attempt to redefine herself so that she could perform some sort of meaningful work. However, she

will not return to her former position as it is become clear that her year has been devastating to her mentally and physically.

22. On June 26, 2017, Plaintiff presented to the Dartmouth Hitchcock Neurology Headache Clinic for an initial consultation with Dr. Barbara Nye. She was assessed with chronic migraine with and without aura, and Aura without migraine that is becoming more predominant.

23. Assessed at the Neurology Headache Clinic on August 29, 2017, Plaintiff indicated that in the past three months she had missed 20 days of work.

24. In a September 6, 2017 office note, Mary Ellen Copening noted that, prior to be taking taken out of work Plaintiff was missing a day or two per week of work, due to headaches over the past several months.

25. On September 11, 2017, Plaintiff was seen at the Dartmouth Hitchcock Neurology Headache Clinic and diagnosed with chronic headaches with chronic migraine phenotype.

26. On September 27, 2017, Plaintiff was diagnosed with PMR.

27. At a November 8, 2017 office visit, Ms. Copening noted that Plaintiff was making a slow recovery from her PMR, is emotional secondary to the steroids and is having difficulty imagining taking on the workload this soon. Plaintiff remained out of work while tapering from the prednisone.

28. On November 30, 2017, the plan was that she would return to work four hours a day for a period of a few days while making the adjustment, and to develop a plan for slow reintroduction to the workplace environment, in order to avoid undue stress for the Plaintiff.

29. Plaintiff returned to work in January for 12 hours a week, but was able to work for less than 3 weeks due to her disabilities.

30. On January 16, 2018, Plaintiff was seen for follow-up by Alicia J Zbehlik, M.D. Her impressions were "arthropathy (some small joint and back pain and Sicca symptoms, Raynaud's with ischemia, seronegative ANA, ENA. This picture is evolving into a seronegative RA picture."

31. On March 30, 2018, Plaintiff saw Nisha Baliga, M.D., a psychiatrist, who diagnosed with adjustment disorder with anxiety and depression. She was referred for a medication evaluation in light of worsening symptoms secondary to psychosocial stressors.

32. On May 8, 2018, Plaintiff presented at the Neurology Headache Clinic for a Botox injection for chronic migraine. It was recommended that she shorten the interval between Botox injections to 10 weeks because her migraines consistently increased at the end of the ninth week of the interval over the past 6+ months.

33. The Liberty based its decision to deny benefits on the opinions of physicians it hired to conduct a records review. These physicians never met nor examined Plaintiff.

34. The Liberty did not consult an expert in vocational rehabilitation or job analysis before it determined that Plaintiff was capable of performing the normal responsibilities of her position in an acceptable manner.

35. The Liberty did not take into account that Plaintiff had attempted without success to return to her job on a very part-time basis after she was diagnosed with PMR, nor that she had missed many days of work in the months before she left work as a result of chronic intractable migraine headaches.

36. The Liberty's decision to deny long-term disability benefits was arbitrary, capricious, unreasonable, irrational, an abuse of discretion, contrary to the terms of the Plan,

contrary to the evidence and contrary to law, as demonstrated by the following non-exhaustive examples:

    a. The Liberty failed to have Plaintiff independently examined, and instead relied on the opinion of medical professionals who merely reviewed Plaintiff's medical records and rejected the opinion of Plaintiff's primary care provider;

    b. The Liberty relied on the opinions of medical professionals who were financially biased by their relationship with Liberty and as such unable to offer an unbiased opinion;

    c. The Liberty relied on the opinions of non-treating medical professionals who never examined Plaintiff, while discarding the opinions of Plaintiff's treating medical professionals;

    d. The Liberty relied on the opinions of non-examining medical professionals whose opinions were not supported by substantial evidence in the claim file, and were not consistent with the overall evidence in the record;

    e. The Liberty denied benefits without regard to Plaintiff's unsuccessful attempt to return to work;

    f. The Liberty denied benefits without demonstrating any nexus between the opinions of the doctors it hired and Plaintiff's normal job duties and responsibilities;

    g. The Liberty denied benefits without soliciting the opinion of a vocational expert as to Plaintiff's ability to perform her normal job duties and responsibilities given her medically determinable impairments.

    h. Liberty "picked and chose" evidence in the record to support its decision to deny the claim, while ignoring other record evidence that supported Plaintiff's claim;

    37.    The Liberty abused its discretion in denying Plaintiff's claim.

38.     The decision to deny benefits was not supported by substantial evidence in the record.

39.     The Liberty's denial of benefits under the Plan has caused Plaintiff to incur attorneys' fees and costs to pursue this action. Pursuant to 29 U.S.C. § 1132(g)(1), Defendant should pay these costs and fees.

40.     A dispute now exists between the parties over whether Plaintiff meets the definition of "Totally Disabled" under the terms of the Plan. Plaintiff requests that the Court declare she fulfills the Plan's definition of "Totally Disabled," and is accordingly entitled to all benefits available under the Plan.  In the alternative of the aforementioned relief, Plaintiff requests that the Court remand and instruct The Liberty to adjudicate Plaintiff's claim in a manner consistent with the terms of the Plan.

**WHEREFORE,** Plaintiff respectfully requests the following relief against Defendant:

   A.  A finding in favor of Plaintiff against Defendant;

   B.  Pursuant to 29 U.S.C. § 1132(a)(1)(B), damages in the amount equal to the disability income benefits to which Plaintiff is entitled through the date of judgment;

   C.  Prejudgment and postjudgment interest, calculated from each payment's original due date through the date of actual payment;

   D.  Any Plan benefits beyond disability benefits that Plaintiff is entitled to while receiving disability benefits;

   E.  A declaration that Plaintiff is entitled to ongoing benefits under the Plan so as long as Plaintiff remains disabled under the terms of the Plan;

   F.  Reasonable costs and attorneys' fees incurred in this action;

   G.  For such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED THIS  4th day of June, 2019,

                                    By: /s/ Sheila O'Leary Zakre (#9101)
                                        Zakre Law Office
                                        4 Park Street, Suite 2056
                                        Concord, NH 033031
                                        603-224-4400
                                        sheila@zlawnh.com
                                  Attorney for Helina Josephson